## Brown *vs.* Brown and others.

To give a vice chancellor concurrent jurisdiction with the chancellor, the cause or matter for which the suit was brought must have arisen within the circuit of such vice chancellor; or the subject matter in controversy must be situated within that circuit at the time of the commencement of the suit; or the defendants or parties proceeded against, or some of them, must be residents of such circuit, at that time.

*It seems* that executors duly appointed in another state, have a right to take charge of and control personal property of the testator situated here; where there is no conflicting grant of letters testamentary in this state.

Where stocks are held in this state by a citizen of another state, at the time of his death, and he dies in that state, leaving a will executed there, the remedy of his residuary legatee, if he wishes to obtain the proceeds of such stocks and the dividends which have accrued thereon, after the debts and general legacies of the testator have been paid, is to cite the executors to prove the will and to take out letters testamentary thereon in this state; and if they neglect to do so, to have himself, or some other person, appointed administrator with the will annexed here.

Even if the court of chancery has general jurisdiction to call upon executors, or administrators, appointed in another state or country to account, and to pay over the proceeds of the property of the decedent to those who are entitled to it by the law of his domicil, the fact that a single item of the personal property is situated within one of the chancery circuits, of this state, will not give to the vice chancellor of that circuit jurisdiction of the cause.

The bill, in such a case, must be filed before the chancellor, or before the vice chancellor of the circuit where the defendants reside, or where the cause of action arose.

To give a vice chancellor jurisdiction on the ground that the subject matter in controversy is within his circuit, it is not sufficient that a small part of that subject matter is situated there. So much, at least, of the subject matter must be situate within the circuit as to enable the vice chancellor to make a decree which will do substantial justice, between the parties, with respect to that part of the subject in controversy to which his jurisdiction extends. And where that cannot be done, the bill must be filed before the chancellor, who has general jurisdiction ; or before some vice chancellor who by reason of the residence of the defendants in his circuit, or otherwise, has jurisdiction to make a decree relative to the whole matter.

*It seems* that the legislature, in apportioning the equity jurisdiction, among the vice chancellors, did not intend that in cases where the whole matter in controversy could not properly be litigated in different suits, before the chancellor, separate suits in relation to different parts thereof might be brought before the several vice chancellors within whose respective circuits such different parts of the subject matter of the suit were situated.

Where executors, appointed in another state, have a right to receive from a trust company, located in one of the chancery circuits of this state, money of their testator deposited with such company, and to apply it in a due course of administration, at the place where they were appointed, and where they do thus receive it,

the receipt of such money, by the executors, will not be sufficient to authorize the filing of a bill against them in that circuit, on the ground that the cause, or right of suit, arose within that circuit.

The statute gives to the executor, or the administrator with the will annexed, who may be appointed in this state, and to him only, the right to call the foreign executor to account, for the wrong done to the estate.

Where the court of chancery interferes, in special cases, to protect the rights of creditors or legatees, of a testator, who was domiciled abroad, as to the personal property which is found in this state, and which property is in danger of being lost or squandered before a proper representative can be appointed here to protect it, the court proceeds upon the ground that wherever there is a right there ought to be a remedy, either in this or in some other tribunal. And where no remedy to enforce the right exists elsewhere, chancery will furnish such remedy, whenever it is necessary to prevent a total failure of justice; if the property in controversy, or the person of the wrongdoer is within the jurisdiction and control of the court.

Whether, upon a bill filed before the chancellor himself, the court will entertain a suit to call foreign executors or administrators to account, where the executor or administrator is within the jurisdiction of the courts of the state where he was appointed, and where there is nothing in the bill to show that the complainant has not a full and perfect remedy in those courts ?  *Quære.*

As a general question of expediency, *it seems* that persons having claims upon a decedent's estate should be compelled to resort to the courts of the country where the decedent was domiciled, and where the personal representatives of such estate were appointed; especially where the claimants are not creditors, but stand in the characters of legatees or distributees of the decedent.

THIS was an appeal from a decretal order of the vice chancellor of the first circuit, allowing the demurrer of three of the defendants in this suit, J. C. Brown, M. B. Ives and R. H. Ives; and dismissing the bill, as to them, with costs. These three defendants, who were the respondents in this appeal, were appointed executors of the will of Nicholas Brown the elder, who died in September, 1841; and who, at the time of his death, was domiciled in the state of Rhode Island, where all the defendants in this suit, then and at the time of filing the complainant's bill, also resided. The complainant was a son of the decedent and one of his residuary legatees, and resided in the city of New-York; and the object of the bill was to obtain an account of the property and effects of the testator, or at least of so much thereof as was invested in stocks or debts, in this state, at the time of his death. N. Brown the elder, previous to 1833, was in copartnership with T. P. Ives, and doing business under the

name or firm of Brown & Ives. In 1833 the three defendants above named were taken into the copartnership; and the business was continued in the same partnership name. T. P. Ives died in 1835, and thereafter the business of the copartnership was continued by the survivors, without changing the name of the firm, until the death of N. Brown senior in 1841. By the will of N. Brown senior he directed that the firm of Brown & Ives, of which he was the senior partner, should be kept in operation after his death, with all the pecuniary means which it should then possess. He also directed that his share of the copartnership property should remain in the hands and possession of his copartners, who should survive him, for five or seven years at their election, and that no account or inventory thereof should be required or called for by his personal representatives, heirs or devisees, during the time such copartners, or the survivors of them, should elect to continue the copartnership within that time; but that in the meantime his son Nicholas, the complainant, should be paid an annuity of $1000 out of the testator's share of the copartnership property. And he directed that at the termination of such copartnership his share of the effects and property of the firm, as fast as the same could be realized, should one third be paid to his son the complainant, one third to his other son J. C. Brown, and the remaining third to the two children of the testator's deceased daughter, or the survivor of them. And after making various specific devises and bequests of particular portions of his real and personal estate, to his children and grandchildren and others, and directing the payment of many and large annuities and legacies to his relatives, and to churches and literary and benevolent institutions, all of which were to be paid within, or at the expiration of, the term of ten years, the testator devised and bequeathed all the residue of his estate, real and personal, as follows : one third to the complainant, one third to his other son, and the remaining third to his granddaughters A. Francis and A. B. Francis, the children of his deceased daughter, or to the survivor of them; with a contingent limitation of this third to his two sons, in case both of these granddaughters should die unmarried and before attaining the age of

twenty-one. The testator appointed the three appellants, together with T. Burgess who subsequently renounced the execution of the trust, to be the executors of his will. He directed that no bond or security should be required of them upon obtaining probate of the will; and he gave power and authority to them, or the survivors of them, to sell and convey any of his real estate not specifically devised. The appellants, in October, 1841, proved the will before the proper probate court in the state of Rhode Island; and letters testamentary thereon were duly granted to them by that court. One of the granddaughters subsequently died under age and unmarried.

In January, 1843, the complainant filed his bill in this cause before the vice chancellor of the first circuit, and made the appellants, and the surviving grand daughter of the testator, together with her father, defendants in the suit. The bill, after setting out these facts, stated that the testator died seised and possessed of a large real and personal estate, which was more than sufficient to pay all his debts, which the appellants, his acting executors, had taken possession of, and that they then held and enjoyed the same; of which estate the complainant was unable to state the precise nature and extent, condition and value, and he therefore claimed a discovery thereof from them, and of the disposition of the property. The bill further stated, that no letters testamentary, or of administration, upon the estate of the testator, had been granted in the state of New-York; that during the continuance of the first copartnership between the testator and T. P. Ives, they made investments, of the profits of their business, in public and private stocks, and other securities; which stocks and securities were purchased, and the investments therein made, in their copartnership name, but which investments were not designed or intended to form or constitute any part of the business capital of the firm; that among the investments thus made, was a deposit of $50,000, upon interest, with the New-York Life Insurance and Trust Company, in the city of New-York; and large investments in public and private stocks in this state, particularly in the Bank of the State of New-York, and in the New-York Insurance Company; and

that the said deposit remained unpaid, and the stocks undis-
posed of at the testator's death. It was further alleged in the
bill, that the acting executors of the testator, after his death,
withdrew the deposit from the trust company, and had applied
the same to their own use ; that the appellants had no right or
interest in any of the investments in public or private stocks
made by the first firm of Brown & Ives, before they became
partners, but the said investments were always treated and re-
garded as the individual property of N. Brown, the elder, and of
T. P. Ives ; that at the time of the testator's death a large por-
tion of his estate consisted of property, rights and credits, stocks,
and other choses in action, to which he was entitled as surviv-
ing partner of the first firm of Brown & Ives, of which he and
T. P. Ives were the members ; that other portions thereof con-
sisted of property, rights, credits, stocks, and other choses in
action, belonging to the second firm, of which they and the
appellants were members ; that other portions thereof consisted
of property, rights, credits, stocks, and other choses in action be-
longing to the third firm, which was formed at the death of
T. P. Ives; and that the acting executors of N. Brown, the
elder, had taken possession of, and still held, all the property,
rights, credits, stocks, and other choses in action, and money to
which he was entitled, or in which he was interested as a part-
ner in each of the said firms. The bill also alleged that the
respondents had never rendered any account, statement, or in-
ventory, of any part of the said property, rights, credits, stocks,
and choses in action, to which the testator was entitled, or in
which he was interested as a member of the said several firms,
or of the amount, value, or disposition thereof; that the value
of such property and effects, and the amounts realized therefrom
by the respondents, was several hundred thousand dollars ; and
that they had applied the same to their own use, and were using
the same for their own benefit and emolument. The complain-
ant therefore prayed that the respondents might discover and set
forth a full account of such property and effects, and of the tes-
tator's interest therein, and the interest, rents, issues and profits re-
ceived from the said property and effects, &c. He also alleged,

in his bill, that he believed the respondents, or some of them, unless restrained by injunction, would sell, or dispose of, the public or private stocks in the state of New-York, which were purchased by the testator and T. P. Ives, in the name of the first firm of Brown & Ives. And he prayed for a full account of the administration of the testator's estate, and that the personal estate might be applied to the payment of the debts and legacies in the due course of administration, and that the residue and clear surplus might be ascertained and secured under the order of this court for the benefit of the complainant and the other residuary legatees; or that an account might be taken of the rights, credits, and personal property, and choses in action which belonged to the testator at the time of his death, or in which he was in any way interested, in the state of New-York; and that after payment of all legal charges thereon, the clear surplus might be secured by, and under, the order of the court, for the benefit of the complainant, and the other residuary legatees; or that the complainant might have such other, or further, relief as he might be entitled to upon the case made by his bill.

The respondents demurred to the bill for want of equity; and they also stated, as grounds of demurrer, that, as to the property of the testator which was alleged to have been in this state at the time of his death, if they were liable to account for it here, they could only be called on to account therefor by an executor or administrator, who had taken out letters testamentary, or letters of administration with the will annexed, here; that it was not alleged in the bill that any part of the other real or personal estate of the testator was in this state at the time of his death, or at any time since, and, therefore, that the proper tribunals of the state of Rhode-Island alone could call them to account for the same, and that the court in which the complainant's bill was filed had not jurisdiction of that part of the case; that the bill did not charge the respondents with any fraud, breach of trust, or misapplication of any part of the real or personal estate therein mentioned, contrary to their duty as executors; that the vice chancellor had not jurisdiction, because the cause or matter of the suit did not arise within the first circuit, and the sub-

ject matter in controversy was not situated within that circuit, and the defendants did not reside there.

The following opinion was delivered by the vice chancellor:

McCoun, V. C.   If the court of chancery has jurisdiction, so as to entertain this bill at all, that jurisdiction may be exercised by the vice chancellor of the first circuit; some portion of the property in question being situated within this circuit.   But the principal ground of this demurrer is, that the defendants being foreign executors, are not liable to be sued or called to an account in the courts of law or equity of this state.   The will was made in Rhode Island, where the testator resided, where the bulk of his estate is situated, where the will has been proved, and letters testamentary granted, and where the executors reside. Some funds of the testator had been invested by him in stocks in the city of New-York, and remained so invested at his death, and at the time of the filing of this bill.   The complainant, a resident of New-York, is one of the residuary devisees of the estate.   And he files this bill for the purpose of calling the defendants to an account, in relation to the whole estate; and of having his residuary share ascertained and secured, or paid to him, and of preventing in the meantime the funds invested here from being transferred or removed out of this jurisdiction.   The defendants have not qualified as executors, under the laws of this state; they not having proved the will, nor taken out any letters testamentary here.

As a general rule, suits cannot be brought by or against foreign executors or administrators; that is, they cannot sue or be sued as such, by virtue of their appointment or authority derived from the laws of another state.   (*Story's Confl. of Laws*, § 515.)   It is true, that previous to our revised statutes, an executor or administrator coming from abroad into this state, and here collecting property or money of the decedent, without first taking out letters under the laws of this state, might be sued as executor *de son tort*.   And such was the case of *Campbell* v. *Tousey*, (7 *Cowen*, 64.)   But the revised statutes have abolished this remedy by action against any person as executor

of his own wrong, (2 *R. S.* 449, § 17;) and have made ample provision for a legally constituted executor or administrator. (*Id.* 75, § 31.) So that a suit similar to that of *Campbell* v. *Tousey*, could not now be sustained at law.

It is true, there are cases in which the court of chancery will assume jurisdiction over foreign executors and administrators, at the instance of creditors, legatees, and next of kin. But these must be special cases, to be shewn by the bill, and where but for this court's interference there would manifestly be a failure of justice, or hopeless remedy elsewhere. Instances are pointed out by the chancellor in *McNamara* v. *Dwyer*, (7 *Paige*, 239;) in which case he deemed himself called upon to assume jurisdiction over a foreign administrator who had left his own country and come to this, bringing with him the property of which he was administrator, and wrongfully applying it to his own use.

The bill in question does not present such a case, nor attempt to show that the complainant cannot have an adequate remedy in the courts of the state of Rhode Island. The complainant is not a creditor seeking payment of a debt contracted with him in the state of New-York, and upon the faith of funds or property placed within this jurisdiction, and which it might be unjust to withdraw from his reach. He is a volunteer, claiming the gift of a residue of a large estate, under a will made in Rhode Island, where the bulk of the property is situated, and where the persons entrusted by the testator with its management reside; and where the testator doubtless contemplated the affairs of his estate should be closed and settled. The will was made with reference to the laws of the testator's domicil; and by those laws the affairs of his estate are to be administered, the accounts to be settled, and the residue to be ascertained and distributed. The complainant, in taking his share, must be left at all events, to the operation of the lex loci, as to his rights. And in my opinion, he must also be left to pursue his remedy according to the lex fori in that state; unless, indeed, he could show (which he has not done) that by some act of the defendants in removing their persons or property from that jurisdiction, any remedy

Brown v. Brown.

which he might undertake to pursue there, would be fruitless.

The demurrer must be allowed, and the bill dismissed with costs.

*T. W. Tucker & S. A. Crapo*, for appellant. The complainant bases his right to assert this claim in our courts of equity upon two grounds: 1st. That a large amount of money, the private property of the testator, which was no part of the copartnership capital, to which the defendants had no claim other than as executors, and which was within the jurisdiction of this state, has been intermeddled with by them and applied to their own use. 2d. That the complainant, being a citizen of this state, has a right to the aid and protection of its equitable tribunals, in compelling the defendants to account to him for his legacy or debt, and of all assets of the testator, wherever received by them, and to pay him his distributive share.

The defendants object, to this claim, that having taken out letters testamentary in Rhode Island, they are amenable to the tribunals of that state only; and that by their obtaining such letters, the courts of Rhode Island obtained the exclusive jurisdiction as to all matters connected with the settlement of the testator's estate.

In filing this bill for relief, the complainants relied chiefly on the authority of *McNamara v. Dwyer*, (7 *Paige*, 239;) in which case a bill was filed by a resident of New-York against a resident in Louisiana, for an account and distribution. The defendant having taken out letters of administration in Ireland, had brought assets of the estate into New-York. The chancellor there says: "I can see no valid objection to a suit against him in this court, where he may have the full benefit of his administration of the estate abroad, and where full and ample justice can be administered without regard to the technical form of the suit. I have therefore no doubt but that this court has jurisdiction to compel the defendant I. Dwyer to account for and pay over." The authority and applicability of this case has been denied by the defendant, because, 1st. It is adverse to

---

Brown *v.* Brown.

---

the principles of law stated by Mr. Justice Story, in his *Conflict of Laws*, page 424. 2d. The case of *McNamara* v. *Dwyer*, applies only to foreign executors who have brought assets into the state, and not where, as in this case, they have found the assets, here and appropriated them.

The weight of Judge Story's opinion was considered in deciding *McNamara and Dwyer ;* and also in the case of *Tunstall and others* v. *Pollard's administrator*, (11 *Leigh*, 1,) where a bill had been filed to compel payment of a legacy by an executor appointed in England ; he having brought assets into the state of Virginia. Tucker, J. there says, page 25, " I am of opinion that an executor who has qualified and received assets in a foreign country and has brought them into this jurisdiction, is liable to be sued, and to be compelled to account." After examining the cases cited by Judge Story, he continues, " Upon a full review of the whole subject, I am of the opinion, that justice, convenience, and necessity, require a recognition of the right to sue an executor who has qualified abroad, if he comes within this jurisdiction, bringing the assets with him," &c. (*Id.* 36.) The same principle is recognized in the case of *Bryar and others* v. *McGee, adm'r, &c.* (2 *Wash. C. C. Rep.* 337,) in which a bill was filed by a creditor against an administrator, who had been appointed under the laws of New-Jersey. A demurrer was interposed by the defendant, on the ground that having taken out letters of administration in New-Jersey, he could only be called to account in that state. The court there say: " The demurrer must be overruled. The defendant having property in his hands, belonging to the estate, may, in equity, be called on for that property in any place."

In this case, it is to be observed, there was no allegation that the defendant had brought assets into the jurisdiction of the court. They were all received elsewhere. So also in the case of *Pugh's ex'rs* v. *Jones,* (6 *Leigh's Rep.* 310,) Tucker, J. says : "Upon this interesting question, (i. e. whether a foreign executor who comes into Virginia may be sued,) I shall not at this time offer a definite opinion, as it is not required by the present state of the pleadings. I shall only say that I incline to

think the action may lie." Again, in *Swearingen* v. *Pendleton,* (4 *Serg. & Rawle,* 389,) the question was, whether an executor who had taken out letters testamentary in Virginia, where the testator died, and had before, for a considerable period, resided, was answerable in Pennsylvania for the assets which had come to his hands in Virginia, before his accounts were settled there. He had taken out ancillary letters in Pennsylvania. The court say: " The executor is liable in regard to all assets which come into his hands, whether they arise in the country where letters testamentary are granted, or elsewhere, as in another state, or even in a foreign country; and this principle is well established." (*Dowdale's case,* 6 *Co.* 46. *Cro. Jac.* 55.) So in *Evans' adm'r* v. *Tatem,* (9 *Serg. & Rawle,* 252,) Tilghman J. says: " If a person who administers in one state, and receives assets there, is not liable on his removal to another state, it would produce the greatest injustice. The removal from state to state, is the act of the administrator, which the creditors of the intestate cannot prevent, and therefore they should not be prejudiced by it. Wherever he goes, he carries with him the obligation to administer the assets." In *Dowdale's case,* it was said: " The urors have found the substance of the issue, i. e. assets; the finding that they are beyond sea, is surplusage." And in *Campbell* v. *Tousey,* (7 *Cowen,* 64,) which was assumpsit, by an administrator against an executor, it appeared that the defendant's testator resided and died in Pennsylvania, and that the defendant had taken out letters testamentary in that state. That as executor, he had received assets in Pennsylvania, and brought them into New-York, and that he had received assets in this state. Under these facts the circuit judge charged the jury that the defendant was liable for all the assets which he still retained in his hands, or which he had expended or disposed of in New-York; unless in the due course of administration, whether they were received in the state or originally received in Pennsylvania. The supreme court, per Sutherland, J. say: " We see no error in this charge."

The principle of law which the above cases seem to aim at establishing, namely, that a foreign executor bringing assets of

his testator into this state would be liable, in a court of equity at least, to the legatee or creditor, is not impaired or contradicted by any of the cases which Judge Story cites, in support of his position that a foreign executor can neither sue nor be sued in this state. In fact he does not appear to have considered the character of executor as being different in its consequences or liabilities, when regarded as suitor, from that which would attach to him as a defendant. There is a difference, however, which has been frequently recognized as existing, and which it is apparent, from the reason which Judge Story himself gives, must exist. In the case of an executor being plaintiff or complainant, it is remarked that our courts will take no notice of his official character, excepting where it is conferred by the laws and courts of this state. The reason is obvious; his character is a mere creation of the law, and involves certain privileges and immunities. Of course these, so far as they affect the rights or interests of our own citizens, ought not and cannot be conferred by a foreign jurisdiction. Our courts therefore recognize no executors, excepting such as are qualified according to the laws of New-York. But if our courts should allow a foreign executor, when sued, to set up his foreign appointment as a defence, they would in so doing recognize him as executor. That is to say, they would allow him to make use of that character as a shield which he cannot use as a weapon. He may shelter himself from paying his own debts, behind his foreign executorship, when he cannot use it to collect those of his testator. This palpable inconsistency will illustrate the rule of law as it ought to be applied; and the reasons for it. Our courts will not notice the character of a foreign executor, because they will not recognize an artificial legal character, conferring privileges, created by any laws but our own; and when a person having such character, derived from a foreign jurisdiction, is sued here, our courts will not permit such character to be used as a defence, for the same reason. This conclusion, or at least nothing beyond this, will result from a consideration of the cases which Judge Story cites.

All the cases cited by Judge Story apply to the privileges of an executor, not to his liabilities. They consider him as seeking

Brown v. Brown.

to avail himself of that character for the advantage of himself and the estate ; but they nowhere consider the character as shielding him from personal accountability. It is in this view of the subject that Chancellor Kent, in *Doolittle* v. *Lewis*, (7 *John. Ch.* 45,) says that " a party cannot sue nor defend in our courts as executor under the authority of a foreign court of probates ;" a form of expression which differs very materially in its meaning from that of Judge Story, viz. " that no suit can be brought by or against an executor." And Chancellor Kent further illustrates his own views of the subject in his concluding remark, that " otherwise the foreign executor might withdraw assets from the state." In truth the reasons which exist against allowing a foreign executor to be recognized as such, in our courts, as plaintiff, will operate with equal force against his setting up that character as a defence, in actions brought against him. Unless this be so, the inconsistency already alluded to must follow, namely, that our courts will not permit a foreign executor, as such, to bring an action on behalf of his testator ; but they will allow him to set up the character as a defence in a suit brought against him for his own tort. He will not be able to use his foreign letters to protect the estate ; but he may use them to benefit himself. Judge Story himself fortifies this view of the subject. He says, " no nation is under an obligation to enforce foreign laws which may be prejudicial to its own rights or those of its subjects. Persons domiciled in foreign countries are often indebted to persons living in other countries. In such case it would be a great hardship upon creditors to allow a foreign executor to withdraw funds and leave the creditor to seek relief in a foreign domicil." (*Story's Confl. of L.* 421.) And in *Blewitt* v. *Blewitt*, (1 *Younge*, 541,) Lord Lyndhurst said, " a distinction prevails in all the cases, in suits by and against executors." If an executor who brings assets into this state is liable, in this form of action, a foreign executor who applies assets already here to his own use should be, it would seem, a fortiori liable. As the possession of assets upon which the complainant has a claim, and not the mere act of bringing them into this state, must be the gist of our action, it would be difficult to assign a reason for

sustaining an action against Rhode Island executors, who come into the state with property of the testator in their possession, which would not give us equal relief against a foreign executor who has applied $50,000 of the estate which he found within this jurisdiction. The cases of *Campbell* v. *Tousey*, (7 *Cowen*, 64,) and of *Swearingen* v. *Pendleton*, (4 *Serg. & R.* 389,) expressly recognize it to be law, that "the executor is liable in respect to all the assets which come into his hands, whether they arise in the country where the letters testamentary are granted or elsewhere." Assuming that the courts of this state take no notice of foreign letters testamentary, the want of probate here is no obstacle to our right of action. If this bill had been filed in Rhode Island, before probate, the want of it would have been no defence, if the executors had assented to act. The probate confers no authority whatever. That is derived from the will exclusively. The probate is the legal and statutory evidence of the authority. (*Pinney* v. *Pinney*, 8 *Barn. & Cress.* 335.) If, quoth Sir Edward Coke, twenty be named executors, and one prove the will, it is sufficient for them all. (9 *Rep.* 37, *a.*) The legatee may accordingly claim his legacy before probate, whenever he can show, aliunde, an acceptance of the trust. (1 *Wms. on Exec.* 197. 1 *Salk.* 298.) The case of *Blewitt* v. *Blewitt*, (1 *Younge*, 541,) is important. There a bill was filed, and a demurrer put in. Lord Lyndhurst says, "The next question was, whether an executor can be sued before probate. A distinction prevails in all the cases, between suits by and against executors. If executors elect to act, they are liable to be sued, before probate, and cannot afterwards renounce." So in the case of *Dullwich College* v. *Johnson*, (2 *Vern.* 49,) the complainant claimed a discovery of the personal estate bequeathed to the college. The defendant pleaded that the will was not proved, and the court overruled the plea.

It is clear, upon the grounds which have already been stated, that if the executor has administered, he will be liable, not only before probate, but though he should refuse to take probate and administration be committed to another. (1 *Wms. on Ex.* 197. *Went.* 86. *Plowd.* 28. *Toller*, 49. *Duglas* v. *Forest*, 4

*Bing.* 704.) The payment of legacies is one of the powers possessed by executors before probate. (1 *Wms.* 172.) An executor is a complete executor for all purposes but bringing actions, before probate. (*Idem.* *Wankford* v. *Wankford,* 1 *Salk,* 298.) The reason for the exception as to bringing actions is, that the probate is the statutory proof of his appointment. (*Angerstine* v. *Martin,* 1 *Turn. & R.* 241. *Wms. on Ex.* 994. 10 *Ves.* 13. *Pearson* v. *Pearson,* 1 *Sch. & Lef.* 12.) If, therefore, a probate is unnecessary to entitle us to relief, and would be no defence to an action brought in Rhode Island, the want of one in New-York can be no objection. And as our courts will take no notice of a foreign appointment, we stand in the same attitude here as we should do before probate granted; supposing our bill was filed in Rhode Island.

The defendants are liable to be held to account in this action, because having accepted the trust, declared by the will, they are to all intents and purposes clothed with the character and duties of trustees. In that character they are amenable every where and in all courts. Executors are, in almost every respect, considered in courts of equity as trustees. Upon this principle those courts exercise a jurisdiction over them. (2 *Wms. on Ex.* 1437. *Adair* v. *Shaw,* 1 *Sch. & Lef.* 243.) Equity considers the executors as trustees for the legatee in respect to the legacies; and all trusts are the peculiar objects of equitable cognizance. Courts of equity will compel the executor to perform his testamentary trust. (1 *Wms. on Ex.* 169.) The duties of an executor, considered as trustee, are not local nor special; they have a general and received legal signification. (2 *Wms. on Ex.* 1002. *Byrchal* v. *Bradford, Mad. & Geld.* 13, 233.) And in this character the residuary legatee, at all times and places, sues the executor for his legacy.

The complainant in this action has a right to the protection and assistance of the tribunals of his own state in compelling the executor to account for all the assets, wherever received; and payment of his distributive share will be decreed him. This proposition is established by *Campbell* v. *Tousey,* (7 *Cowen,* 64.) The defendant there was held liable for all the assets retained

Brown v. Brown.

in his hands, or which he had expended or exposed, whether they were received in this state or in Pennsylvania. So in *Swearingen* v. *Pendleton*, (4 *Serg. & Rawle*, 489,) the court say the executor is liable for all assets, whether they arise in the country of probate or elsewhere.

*C. O'Conor*, for the respondents. The complainant insists that any individual, holding the appointment of executor under the laws of a sister state, who happens to come within this state, and remains long enough to be served with process, may be made amenable to an action at law by creditors, and to a bill in equity by legatees, for an account, in respect of all property yet unadministered which may have been in his hands at any time, or in any place. Many authorities are cited in support of this inconvenient doctrine. In the present state of the law in this state, little would be gained by a critical examination of all those authorities. It may suffice to state, in brief, that prior to the revised statutes, the following principles were recognized by competent judicial authority: *First.* An administrator could neither sue, nor be sued, at law, except within the jurisdiction from which he received his appointment. *Secondly.* Any person who intermeddled with the goods of a deceased person, was sueable, as executor, at law, by creditors ; and he could not defeat the action, except by showing that he was an administrator legally appointed within the jurisdiction in which the suit was brought, (8 *John.* 126 ;) or that he acted as agent of such an administrator, or of an executor who had taken out letters testamentary within the jurisdiction. (*Peake's N. P. Cases*, 86.) Under any other state of facts he was responsible to the action, either as rightful executor, or as executor de son tort ; and between those characters the pleadings never discriminated. (3 *Bac. Abr.* 21, *tit. Executor*, § 3, *subd.* 1, 2, 3.) It may be a qualification of this rule, that if there was a rightful executor, or administrator, within the jurisdiction, creditors could not charge the intermeddler in this way ; but that the rightful executor, or administrator, must sue him as a mere wrongdoer, in trespass, or some similar action.

Brown *v.* Brown.

A person having received property in a foreign state, under letters testamentary, or of administration, granted there, was never responsible, in an action at law in this state, in respect of such property; even though he brought such property into this state. What is said to the contrary in *Campbell* v. *Tousey*, (7 *Cowen*, 64,) is obiter, and was not then law. (*Jauncey* v. *Seales*, 1 *Vern.* 397.) The defendant, in *Jackson* v. *Tousey*, was fixed with the character of executor by his receipt of property in this state. He was fixed with liability for the whole debt on this ground alone, without reference to the assets brought hither from Pennsylvania; because he had pleaded the false plea of ne unques executor. (*Story's Confl. Laws*, §§ 512, 514.)

So far we have been dealing with the case of creditors and others having a right of action against any one who might represent the deceased. But in respect to the rendering of an account to legatees and next of kin, the law was otherwise. The ecclesiastical, probate, or surrogates' courts, never claimed jurisdiction to compel a foreign executor, or administrator, to account for, and distribute, the estate. But the court of chancery, that great receptacle of all undefined powers and remedies, has occasionally interfered, on the ground of necessity; to prevent a gross breach of trust, and a total failure of justice. (*McNamara* v. *Dwyer*, 7 *Paige*, 239. 11 *Leigh*, 24, 29.) The case of *Mc-Namara* v. *Dwyer* must be considered as a disclaimer of jurisdiction to compel a foreign executor, or administrator, to account when he is amenable to the process of his own country. For Chancellor Walworth expressly places his assumption of cognizance on the necessity of the case.

There is no decision, or even dictum, in this state, in favor of the jurisdiction now asserted. On the contrary, even in *Campbell* v. *Tousey*, (7 *Cowen*, 67,) the case so much relied upon by the appellant, Judge Sutherland, in delivering the opinion of the court, says, that the executor "cannot be compelled to account here, even in respect to the assets received in this state; for, not having taken letters of administration here, he is not amenable in that way to any of our courts." Thus stood the old law. As it respects creditors, any one who administered might be

charged at law as executor. None but a rightful executor, or administrator, admitted under the local law, could however be prosecuted as such in a court of probates, or chancery, by distributees or legatees, for an account of the estate. The rule tha. a domestic executor, duly appointed by the will, who acts without probate, would not be permitted to set up that delinquency, and thus bar an account by pleading his own wrongful omission, presents a special case, to which very familiar principles apply. The exercise of jurisdiction over a foreign executor, or administrator, who has withdrawn himself and the estate from the coercive power of the foreign tribunal, and seeks to make our state a city of refuge, from just responsibility, for himself and his fraudulent acquisition, presents another special case proper for the application of a peculiar and extraordinary remedy. A new administrator appointed in this state would have no authority to take from the foreign administrator assets received abroad under his foreign appointment. But the present case, in no wise, resembles either of these. The defendants now reside, and have always resided at the place of the domicil of their testator, and of their appointment. (6 *Wend.* 115.) They are fully amenable to process there. It would, therefore, seem to be very clear that this court ought not to assume jurisdiction as to the foreign assets. If it is a question of judicial discretion, the court certainly would not interfere. (*Story's Eq.* § 58. *Hamilton* v. *Cummings*, 1 *John. Ch. R.* 523.) How is it as to the assets received in this state?

The authorities referred to sufficiently show that the receipt of those assets would, previously to the revised statutes, have enabled a creditor to charge the defendants as executors de son tort. They, by no means, establish that, at any day, this court would have compelled the executor to account in the courts of this state, to the legatees, or distributees. On the contrary, Story says, in his *Conflict of Laws*, (§ 515,) that such collection of assets is not unlawful, and that the distributees should still be left to the forum of the original administration.

Whatever perplexity there might be as to the assets received in this state, in arguing through the maze of cases founded

upon the rights of creditors at common law, and the supposed analogy between those rights and the rights of legatees, or distributees, in a court of equity, the provisions of the revised statutes have obviated all difficulty. *First.* Executors, before letters testamentary granted, have no power to dispose of any part of the estate of the testator, except to pay funeral charges, nor to interfere with such estate in any manner, further than is necessary for its preservation. (2 *R. S.* 71, §§ 15, 16.) *Secondly.* No person shall be liable to an action, as executor, in his own wrong, for having received, taken or interfered with, the property, or effects, of a deceased person ; but shall be responsible as a wrongdoer, in the proper action, to the executors, or general, or special, administrators, for the goods taken, and damages. (2 *R. S.* 449, § 117.) Here is an extinction of this nondescript character, an executor by wrong chargeable as an executor of right. Many incongruities arose from its existence ; and its abolition was very creditable to the legislature. No evil, or mischief, attended the abolition ; for a complete and perfect remedy was declared. A remedy which preserves the harmony of the law, is convenient in itself, and secures all the ends of justice.

It may be said that the last of those provisions applies only to suits at law. We admit it, because it is only at law that an executor de son tort was ever known. An executor de son tort accounting to the legatees, and administering the estate, under the direction of a court of equity, was never heard of. But as cases, showing the liability to a suit at law of an executor de son tort, are cited as authorities for this suit, we refer to this clause of the revised statutes, and insist that it puts an end to the direct authority of those cases ; and must, of course, prevent the assumption, by this court, of a similar jurisdiction from analogy. An executor who has not proved the will and taken out letters testamentary, is now forbidden to appear and represent the estate in this, or any other, court. Under the circumstances detailed in this bill there could not be an executor in this state ; for where the will of a non-resident has been proved and letters testamentary taken in another state, the revised

statutes prescribe that letters of administration shall be granted on the assets in this state. (2 *R. S.* 75, § 31.)

Except in cases like *Dwyer* v. *McNamara*, where, to prevent a failure of justice, and of absolute necessity, a court of equity acts, in aid of the evaded and defeated functions of the foreign jurisdiction, it is an established rule, that if the personal estate of a deceased person is sought to be administered by a bill in equity, an executor, or administrator, holding letters testamentary, or of administration, under the laws of the forum, is an indispensable party. (*Humphreys* v. *Humphreys*, 3 *P. Wms.* 350. *Logan* v. *Fairlie*, 2 *Sim. & Stu.* 284.) In the last case Sir John Leach did not decide that the foreign executor was not a sufficient representative of the decedent. That point was not raised, and consequently not touched by the court. We suppose there was no room to raise it in that very special case. He decided, however, that the next of kin of the legatee, who had died before payment of his legacy, could not maintain a suit for it, and that his administrator was the proper plaintiff. It is a case in point for the general principle, that a regular executor or administrator, must be before the court. The case in 5 *Randolph*, 51, supposed to conflict with Sir J. Leach, it is submitted does not so conflict. In that case it was held, as a strict legal point, arising upon the construction of the commission of an executor de bonis non, that a devastavit was an administration, that the goods converted and wasted by the first executor were not goods not administered; and consequently were not within the commission of the "administrator of the goods not administered." As a consequence it was held, by a majority of the court, that the administrator de bonis non could not call the representatives of the first executor to account for the property wasted. It is submitted, 1. That the decision in that case does not determine that the administrator de bonis non is not a necessary party; but only that he shall not be sole plaintiff. Perhaps the court would have held, if the point had been before them, that, either as co-plaintiff, or as defendant, his presence, as a party to a suit for administration, was indispensable. 2. The dissenting opinion of Judge Coalter shows, most satis-

factorily, that the majority of the judges erred: (5 *Rand.* 97,) and the decision is certainly in conflict with another case in the same court. (3 *Id.* 287.) 3. Our revised statutes certainly contemplate that all property not applied in due course of administration comes within the description of "goods not administered," according to Judge Coalter's opinion. (2 *R. S.* 79, §§ 45, 46.)

Perhaps, previously to the revised statutes, the defendants might have been held to account, in this court, as to the assets received here; on the ground that they were named executors in the will, and derived their authority directly from the testator, and had intermeddled with, and administered, assets found in this state. Such administration, perhaps, might be deemed as not authorized by the foreign letters testamentary, and consequently an assumption of the office of executor, as much as if they had proved the will and taken letters testamentary in this state; the court acting upon their unlawful interference with the assets here, and refusing to permit them to set up their own wrong in not proving the will and obtaining letters testamentary.

But the revised statutes have abolished, both at law and in equity, the practice of treating parties as executors in their own wrong; and have limited the accountability of those who improperly intermeddle in the administration, to a proper action at the suit of the rightful executor, or administrator. And in this particular case, those statutes declare that there can be no executor in this state, but that the assets found here must be administered by means of auxiliary letters of administration to be issued thereon by a surrogate.

It is therefore submitted, that the decision of the vice chancellor, in this case, was manifestly right. The complainant might have taken out letters of administration and maintained trespass against the defendants as mere wrongdoers, unless the foreign letters warranted them in collecting the assets here; and if the foreign letters did confer such authority, then the legatees must resort to the forum from which such letters issued, for an account and distribution.

Brown v. Brown.

*T. W. Tucker & S. A. Crapo*, in reply. The defendants' counsel concedes that previously to the revised statutes, the defendants might have been held to account in this court as to the assets received here. It remains, therefore, merely to ascertain whether the revised statutes have deprived the complainant of the right claimed by him to seek redress in the tribunals of this state, which he confessedly had previous to their enactment. The assumption of the defendants' counsel is, that the jurisdiction of our courts was founded upon an unlawful interference by the foreign executor with the assets in New-York. In other words, that he became an executor de son tort. It is insisted that such was not the ground of the jurisdiction.

All the authorities cited by us in our opening argument, establish the principle that the interference of the executor with the assets of the testator wheresoever situate, was lawful and right; because he derived his authority from the will, and not from any probate thereof, or letters testamentary granted thereupon. Probate and letters testamentary were required only when prosecuting or defending a suit at law or in equity, as evidence of his title to that character; but in all cases where the aid or protection of the judicial tribunals was not required, he might act, and act rightfully, without either such probate or letters. Wherever he could possess himself of the property of his testator, without invoking the aid of the courts of law or equity, he might rightfully do so.

We do not claim the jurisdiction of this court over these defendants upon the ground that they have unlawfully interfered with the property here; nor was that jurisdiction exercised by the court in the like cases previous to the revised statutes, upon that ground. In the case of *McNamara and Dwyer*, the defendant had not unlawfully intermeddled with any assets in this state. Again, in *Bryan* v. *McGee*, (2 *Wash. C. C. R.* 37,) the defendant had not possessed himself of any assets within the jurisdiction of the court. And it was upon a demurrer, similar to that interposed in this case, held that the defendant having property in his hands belonging to the estate of the decedent, might in equity be called on for that property in any place.

So too in *Tunstall* v. *Pollard*, (11 *Leigh*, 1,) the executor had not unlawfully intermeddled with any assets in Virginia, and Tucker, P. in delivering the opinion of the court, expressly puts the ground of the jurisdiction upon the fact that the executor had rightfully possessed himself of the property. He says: "If the executor was appointed in England, and came to Virginia, without having qualified, and received assets in Virginia, he might be sued here." The case there put by the learned judge is precisely that now presented. Executors appointed in Rhode Island, have come into the state of New-York, and, without having qualified, have received assets in this state. Can they not, in the language of the learned judge, be sued here? The ground of the jurisdiction of this court, therefore, never rested upon any unlawful interference of the executor with the assets here; for such interference was, in point of fact, lawful. But upon the ground that having assumed upon himself the office of executor and trustee, he might be called upon to account for the just discharge of the duties which he had assumed, in all places and in all jurisdictions. In the liabilities of an executor, and in the place of his accountability, he does not differ from any other trustees. The remedies against a trustee are not local; to be enforced only where the trust was created and the power conferred, or where the property, the subject matter of the trust, was acquired. Those remedies are universal, to be enforced wherever the court obtains jurisdiction over the person of the trustees. If Mr. Brown, the testator, had, in his lifetime, made a deed declaring the same trusts as those which result from his will, would there have been any doubt as to the jurisdiction of this court? It is difficult to perceive any difference between the case of parties deriving their authority from a will, from what would exist in case it was derived from a deed. The revised statutes, therefore, upon the subject of executors de son tort, have no applicability to this case.

It is said that the entertaining of jurisdiction, in this case, will be attended by inconvenience. If this were true, it would be no answer to the claim, by a citizen of this state, to have the aid of its tribunals of justice in the assertion of his rights. But

Brown v. Brown.

the assertion is not correct in point of fact; as is fully demon-strated in the opinion of the chancellor in the case of *Mc-Namara* v. *Dwyer*.

The defendants' counsel also insist that the jurisdiction of this court cannot extend over the property of the decedent which was situated in the state of Rhode Island.

The case of *Swearingen* v. *Pendleton*, (4 *Serg. & Rawle*, 489,) cited in the opening argument, is conclusive upon this point. The court there say: "The executor is liable in respect to all assets which came to his hands, whether they arise in the country where the letters testamentary are granted, or else-where, as in another state, or in a foreign country; and this principle is well established." So also the case of *Bryan* v. *McGee*, (2 *Wash. C. C. R.* 337,) just referred to, is a direct authority on this point. The defendant having property in his hands belonging to the estate may, in equity, be called upon to account for that property in any place. Indeed, it would be impossible to adjust the rights of the parties to the assets re-ceived in this state without a full account of all the property which has come to the hands of the executor. It is suggested that the complainant should himself have taken out letters of administration in this state. It is a sufficient answer, that the defendants, by statute, are entitled to a priority in such letters, and that the mere notice of an application for such letters would enable the defendants to elude an accountability here, by removing all the property out of our jurisdiction.

Finally, the complainant is turned to the tribunals of Rhode Island for relief; the defendants being, as it is said, fully amenable to their process. That a citizen of New-York should prefer to have his rights adjudged by the courts of his own state, and not be put to the expense and inconvenience of pro-secuting them in another jurisdiction, is by no means surprising; even if he had no objection to the nature, constitution and man-ner of administering justice there. As it is, the complainant claims the protection of the laws of his own state, and the aid and assistance of this court.

Brown *v.* Brown.

THE CHANCELLOR. The first question which I shall consider in this case is, whether the suit could be rightfully commenced before the vice chancellor of the first circuit; even if the court of chancery in this state had jurisdiction and authority to grant relief to the complainant, upon the case made by his bill. To give a vice chancellor concurrent jurisdiction with the chancellor, the cause or matter which authorized the complainant to file a bill in chancery, for the discovery or relief sought, must have arisen within the circuit of such vice chancellor; or the subject matter in controversy between the parties must be situated within that circuit at the time of the commencement of the suit; or the defendants or parties proceeded against, or some of them, must be residents of such circuit at that time. (2 *R. S.* 168, § 2.) Here none of the defendants, against whom the relief is sought, nor even those residuary legatees who had a common interest with the complainant, and were therefore merely nominal defendants, resided in the first circuit at the time of filing this bill.

Nor was the subject matter in controversy in this suit situated in that circuit, so as to give the vice chancellor jurisdiction of the cause on that ground. The complainant, it is true, alleges in his bill, that the testator and his first copartner made large investments in public and private stocks in this state, in the name of their firm, and that such stocks remained undisposed of at the time of the testator's death. But it does not appear, except by mere inference, that any of such stocks were originally situated within the first circuit; or if they were, that any stocks remained in that circuit at the time of the filing of this bill. The bill alleges that some of the investments were in stocks of the Bank of the State of New-York and of the New-York Insurance Company. And as those corporations are by law to keep their offices in the city of New-York, it may perhaps be fairly inferred, that those particular investments were originally situated in the first circuit, so far as such property can be said to have any locality. But it is not alleged by the complainant that the stocks of these corporations, or either of them, originally held in the name of the first firm of Brown & Ives, remained undisposed of when this suit was commenced; although it appears they had not

been sold at the death of the testator. On the contrary, it is charged in the bill that the appellants had taken possession of, and held all the property, rights, credits, *stocks* and other choses in action and money, to which the testator was entitled, or in which he was interested as a copartner, in either of the firms, at the time of his death, and had applied the same to their own use.

It is true the appellant's counsel insist that the respondents were not authorized, under the letters testamentary granted to them in Rhode Island, to sell or otherwise intermeddle with the stocks and other property belonging to the testator in this state; and that no one except an executor who had taken out letters testamentary in this state, or an administrator with the will annexed, duly appointed here, had any power or control over such property. I had occasion to examine that question in the recent case of *Vroom* v. *Van Horne,* (10 *Paige's Rep.* 550,) and was inclined to adopt a contrary conclusion; though it did not become necessary to express a definitive opinion on the subject, as the decision of that case was finally placed upon another ground. If the counsel for the appellants are right, however, in reference to that question, then the vice chancellor clearly had no jurisdiction whatever in relation to the stocks, if any, which were standing in the name of the testator and his first copartner, upon the books of the Bank of the State of New-York, or of the New-York Insurance Company, at the time of the commencement of this suit. For in that case such stocks could not be sold or transferred, so as to give any right to the purchaser, until letters testamentary, or of administration with the will annexed, were granted to some one, by the proper tribunal in this state. And the only remedy of the complainant, as one of the residuary legatees, if he wished to obtain the proceeds of such stocks and the dividends accrued thereon, after the debts and general legacies of the testator had been paid, was to cite the executors to prove the will, and take out letters testamentary thereon in this state; and if they should neglect to do so, to have himself or some other person appointed administrator with the will annexed, here.

Again; if this court has general jurisdiction to call upon executors or administrators, appointed in another state or country,

Brown v. Brown.

to account, and to pay over the proceeds of the property of the decedent to those who are entitled to it by the law of his domicil, the fact that a single item of the personal property is situated within one of the chancery circuits of this state, does not give to the vice chancellor jurisdiction of the cause. For the subject matter in controversy, in such a case, is not the particular portion of the decedent's personal property which is situated within that circuit. Thus, if a testator residing in the third circuit should make his will and die there, and letters testamentary thereon should be granted to the executors, who resided there at the time of the commencement of a suit by the residuary legatee for an account of the administration of the estate, and for the payment to him of the surplus, the mere fact that a part of the debts due to the testator were due from debtors who resided in the first circuit, or that some of the testator's property, at the time of filing the bill, consisted of stocks in one of the banks in that circuit, would not give the vice chancellor of the first circuit jurisdiction of the case. But the bill, in such a case, must be filed before the chancellor, or before the vice chancellor of the circuit where the defendants resided, or where the cause which entitled the complainant to file such bill arose. Nor would it be consistent with the spirit of the statute in relation to the jurisdiction of vice chancellors, to allow the residuary legatee to file a bill before the vice chancellor of the first circuit, in the case supposed, for the purpose of having an account and a distribution of that part of the testator's estate which happened to be in that circuit. To give the vice chancellor jurisdiction of a case, on the ground that the subject matter in controversy is within his circuit, it is not sufficient that a small part of that subject matter is there. So much, at least, of the subject matter in controversy between the parties, must be situate within the circuit, as to enable the vice chancellor to make a decree which will do substantial justice between the parties relative to that part of the subject in controversy as to which his jurisdiction extends. And where that cannot be done, the bill must be filed before the chancellor, who has general jurisdiction; or before some other vice chancellor, who by reason of the residence of

the defendants in his circuit, or otherwise, has jurisdiction to make a decree relative to the whole matter. The legislature, in apportioning the equity jurisdiction among the vice chancellors, could not have intended that where the whole matter in controversy, between the parties, could not properly be litigated in different suits before the chancellor, separate suits, in relation to different parts thereof, might be brought before the several vice chancellors within whose respective circuits such different parts of the subject matter of the suit were situated. Thus if a mortgage, for the security of one entire debt, upon two or more parcels of land lying in different circuits, is executed out of the state, or out of both of those circuits, and the owner of the equity of redemption, and other parties who are proper to be made defendants to a bill of foreclosure, all reside out of those circuits when a suit to foreclose the mortgage is commenced, the vice chancellor of neither of those circuits will have jurisdiction of the case; unless the mortgagee thinks proper to relinquish his claim upon that portion of the mortgaged premises which is not situated in the circuit of the vice chancellor before whom he files his bill.

The same or still greater difficulties will be found, in attempting to sustain the jurisdiction of the vice chancellor, in this case, upon the ground that the cause or matter in relation to which the complainant seeks relief, arose within the first circuit. The only thing that has occurred in the first circuit which could lay a foundation for any claim against the appellants, in favor of any one, is the receiving of the money which was deposited in the Trust Company. And if the executors, under the letters testamentary granted in Rhode Island, had, as between them and the legatees of the testator, a right to receive that money, with the consent of the company with whom it was deposited, and to apply it in a due course of administration at the place where the testator was domiciled, and where the executors proved the will, as I think they had, then no cause or right to bring this suit arose within the first circuit. For it is not alleged that any breach of trust or any misappropriation of the property or funds of the testator's estate has taken place here.

And the only right of the complainant to call the appellants to account for the money received of the trust company, arises from the making of the will of the testator, appointing them executors, the death of the testator, and the assumption of the trust of executors by them; all of which matters arose or occurred in the state of Rhode Island. Even if the complainant's counsel are right in supposing that these executors could not be permitted to receive the money of the testator in this state, by the voluntary payment of the debtors, for the purpose of paying the debts and legacies, and distributing it with the other funds of the estate according to the directions of the will, without taking out letters testamentary here, still the objection exists, even as to this portion of the funds belonging to the estate, that the statute gives to the executor or administrator with the will annexed, who may be duly authorized by the proper probate court of this state, and to him only, the right to sue for the wrong done to the estate. (2 *R. S.* 449, § 17.)

It is not necessary to express any opinion as to the extent of the jurisdiction of the court of chancery in this state to protect the rights of creditors or legatees, of a testator who was domiciled abroad, in the personal property which is found in this state, where there is a probability that it will be squandered and lost, by the act of a wrongdoer, before a proper representative of the estate can be appointed here to protect it. It is sufficient to say, that where this court interferes, in special cases of that or a similar character, it proceeds upon the principle that wherever there is a right there ought to be a remedy, either in this or some other tribunal. And where no remedy exists elsewhere to enforce the right, this court will furnish such remedy, whenever it is necessary to prevent a total failure of justice; where the property in controversy, or the person of the wrongdoer, is within the jurisdiction and control of the court. Nor do I intend to decide the question here, whether, upon a bill filed before the chancellor, whose jurisdiction is not limited by any localities, and where either the subject matter in controversy, or the person of the defendant is even temporarily within the state, or where the defendant appears voluntarily to the suit without

the service of process here, this court will, in an ordinary case, entertain a suit to call foreign executors or administrators to account.   By an ordinary case I mean one in which the executor or administrator, is within the jurisdiction of the courts of the state or country where the testator or intestate was domiciled at the time of his death, and where the letters testamentary or of administration were granted; and when there is nothing in the complainant's bill to show that he has not a full and perfect remedy in those courts.   As a question of expediency, certainly, those who have claims upon the estate, ought to be compelled to resort to the courts of the country where the decedent was domiciled, and where the personal representatives of his estate were appointed; especially where the claimants are not creditors, but stand in the characters of legatees or distributees of the decedent.   I intend to place my decision in the present case, however, upon the special ground that the vice chancellor before whom the bill was filed had no jurisdiction of the case; even if the case made by the complainant would have entitled him to relief upon a bill filed before the chancellor.(a)

The decretal order appealed from must therefore be affirmed, with costs.

(a) In *Whyte, adm'r &c.* v, *Rose,* (3 *Ad. & El. N. S.* 493,) it was held by the court of exchequer chamber, (reversing the judgment of the court of queen's bench,) that it was no answer to an action of debt on a deed, by an administrator under a prerogative administration from the archbishop of Canterbury, that the intestate died abroad, and that, at the time of his death, the deed was in *Ireland*, and was *bona notabilia* to be administered in Ireland.