PYLE *v.* WARREN.

2 241
8 122
8 317
12 586
13 264
16 440

2 241
36 298

2 241
46 742

2 241
49 385
49 769

### Pyle v. Warren.

PRACTICE. *Objections to evidence* tendered at a trial not supported by reasons therefor are not usually considered; but, if the testimony be directed to a point already indisputably established, refusing to receive it is not ground for awarding a new trial.

STATUTE OF FRAUDS: *Chattel mortgages.* Creditors of the person making a chattel mortgage, and subsequent purchasers in good faith, can alone assail a chattel mortgage under which the mortgagor retains possession.

——: ——. As to such parties, if the mortgage be not recorded, and there is no charge of possession, it is to be considered as absolutely void: if it be recorded, the presumption is only *prima facie* that it is void; and evidence may be received and must be given to rebut it in order to support the mortgage.

——: ——. In determining the *bona fides* of the mortgage, it is immaterial what the assignee of the mortgagee may have paid for it.

CONVERSION: *Demand.* Possession of chattels with claim of title adverse to the owner is evidence of conversion; and no demand need be shown to support replevin.

Error to Otoe District Court.

In his petition, the plaintiff alleged that one Wilson mortgaged to John W. Pyle an undivided two-thirds of certain books of abstracts of title, enumerated, to secure his note for two hundred dollars; that, after the note matured, the said John W. assigned the note and mortgage to the plaintiff, his brother; and also that the property came to the possession of the defendants, who converted the same to their use to the plaintiff's damage seven hundred dollars.

The defendants answered, that they purchased the property of Wilson for a valuable consideration, with-

out knowledge of the mortgage. The cause was tried to a jury, who rendered a verdict for the plaintiff for $223.40. The matters complained of appear in the opinion of the Court.

*E. F. Warren*, for plaintiff in error.

## I. — FRAUD.

1. The Court below erred in not submitting the question of fraudulent intent, in suffering the mortgaged property to remain in the possession of the mortgagor, to the jury *as a question of fact.*

It is not a question of law for the decision of the Court: and when the objection to the sale or mortgage of chattels is, that the vendor or mortgagor continues in possession, the transfer, although *prima facie* fraudulent, is susceptible of explanation by proof that it was intrinsically honest; and such proof is to be submitted to a jury in all cases where it arises upon the trial of an issue of fact. *Smith* v. *Acker*, 23 *Wend.*, 653; *Cole* v. *White*, 26 *id.*, 511; *Hanford* v. *Artcher*, 4 *Hill*, 271; *Thompson* v. *Blanchard*, 4 *N. Y.*, 303; *Stewart* v. *Slater*, 6 *Duer*, 83; *Ford* v. *Williams*, 24 *N. Y.*, 359; *Rogers* v. *Daro*, *Wright*, 136; *id.*, 359; 16 *O.*, 547, 552.

2. The continued possession of the mortgagor rendered the mortgage *presumptively* fraudulent. See *Revised Statutes*, chap. xliii. sect. 70; also *Sturtevart* v. *Ballard*, 9 *Johns.*, 337; *Bissell* v. *Hopkins*, 3 *Cow.*, 166.

3. When possession is permitted to remain with the mortgagor or alienor, it is well established that such mortgages are fraudulent *per se*, and void as to creditors and purchasers, unless retaining possession be consistent with the deed, because possession not remaining with

PYLE *v.* WARREN.

the person shown by the deed to be entitled to it works deception and injury.  *Thornton* v. *Davenport*, 1 *Scan.*, 298.

Also if, by terms of mortgage, the mortgagor could retain possession until default, if he retained it longer the mortgage would be deemed fraudulent and void. *Rhines* v. *Phelps*, 3 *Gilm.*, 465.

4. The general rule is, that the contract must be made in good faith for a valuable consideration, and accompanied with and followed by possession.  *Cases above cited ; Kitchel* v. *Bratton*, 1 *Scan.*, 302 ; 1 *Smith's Lead. Cases*, 1–14 ; 18 *Law Lib.*, 33 ; *Powers* v. *Greene*, 14 *Ill.*, 389.

Guilt, and not innocence, is presumed : continuance of possession by mortgagor is highest presumptive evidence of fraud.  23 *Wend.*, 653 ; 17 *id.*, 53.

5. The filing of the chattel mortgage is no substitute for change of possession of the things mortgaged, and does not rebut the presumption of fraud arising from the continued possession of the mortgagor.  *Otis* v. *Sill*, 8 *Barb.*, 102.

The object of the statute requiring chattel mortgages to be recorded is the same with that of the registry acts respecting mortgages of real estate ; namely, to prevent imposition upon subsequent purchasers and mortgagees. *Gregory* v. *Thomas*, 20 *Wend.*, 17 ; *Much* v. *Patchin*, 14 *N. Y.*, 71.

6. Failure to file adds one more ground for avoidance.  *Wood* v. *Lowrey*, 17 *Wend.*, 492 ; *Smith* v. *Acker*, 23 *id.*, 653.

7. The filing and recording of a chattel mortgage is not a substitute for taking possession, and does not enable or authorize the mortgagor to continue in possession. *Thompson* v. *Van Vetchen*, 5 *Abb. Pr.*, 458.

But, if the mortgage *is* duly filed, the mortgagee is

placed in a position to excuse his omission to take possession. *Id.*

8. Possession of mortgagor is *prima-facie* evidence of fraud. 5 *Dutcher* (*N. J.*), 250. And conclusive evidence in absence of proof of *bona fides.* 15 *Mo.*, 416 ; 40 *Penn. St. R.*, 352 ; 31 *Miss.*, 566 ; 15 *Mo.*, 459.

When, on sale of personalty, the possession does not follow, it is *fraud in law*, without regard to the interest of parties. 40 *Penn. St. R.*, 352. And, when mortgagor sells to *bona-fide* purchaser, sale is valid. 2 *Hall*, 63.

## II. — Consideration.

The evidence shows conclusively that the defendant herein neither paid nor parted with any new or present consideration upon the assignment of the mortgage and note by the said John W. Pyle to him, but that the consideration of such assignment was a previous indebtedness owing the defendant by said John W. Pyle, for which said Pyle had given him, the defendant, his note. There is no evidence that the defendant ever agreed to receive, or *did accept*, such assignment in satisfaction and payment of his claim against his brother, or that the defendant ever surrendered up the note given by the said John W. to him, or released any security therefor ; and, for aught that was elicited on the trial, — and there have been two of them, — the defendant is to-day in the same situation as before the mortgage was assigned to him.

The rule of law is clear, that receiving a note or security merely as payment or security for a precedent debt, no new credit being given, and no security being relinquished or discharged, nor any new responsibility incurred, is *not* parting with value, such as to enable the holder to enforce his right, or to hold it free of the equities against his transferrer ; and therefore it would seem

PYLE *v.* WARREN.

that the defendant is not such a *bona-fide* holder for value as that the Court will protect his rights against the equities of the plaintiffs herein.

III. 1. In no event can a recovery be had against the defendant Warren. The action was brought against these plaintiffs as *individuals:* there is no evidence tending to show a partnership between them, or any pretence that they are partners. And, in case of joint bailees, demand upon and a refusal by one is not in itself a conversion. *Mitchell* v. *Williams*, 4 *Hill.*, 13; *Lockwood* v. *Bull*, 1 *Cow.*, 322.

2. Two cannot be jointly liable unless there is joint conversion; and a demand of and refusal by one is no evidence of joint conversion. 2 *N. H.*, 546.

. 3. In *torts* there can be no partnership; and a tortious act by one of several partners will not render the others liable, unless they ratify and receive the benefits of the tortious act: still less would another person be bound when no partnership existed. It is only in *contracts* that the principle, that one partner is the agent for his copartners, obtains.

4. No act done or omitted by the defendant Warren *after* suit brought would render him liable in this action. Conversion must be proved to have happened before the commencement of the action. Demand after suit brought will not suffice. Nor will a *sale* even by defendant, after suit brought, avail as evidence of a conversion. 3 *Johns.*, 433; *id.*, 54; *Storm* v. *Livingston*, 6 *Johns.*, 44.

*D. Gantt*, for defendant in error.

I. 1. The defendant in error had the legal right of action, because, after condition forfeited, the title to the property became absolute in the mortgagee's assignee:

PYLE *v.* WARREN.

he need not reduce the property to actual possession in order to maintain a suit against one taking it. *Brown* v. *Bement,* 8 *Johns.,* 466 ; *Burdick* v. *McVauner,* 2 *Denio,* 170 ; *Champlin* v. *Johnson,* 39 *Barb.,* 606 ; *Langdon* v. *Buel,* 9 *Wend.,* 80 ; *Patchen* v. *Pierce,* 12 *Wend.,* 62 ; *Robinson* v. *Campbell,* 8 *Mis.,* 365 ; *Thornbill* v. *Gilmer,* 4 *Smed & Marsh,* 153.

2. The mortgage alone is *prima-facie* evidence of property in the mortgagee as against a subsequent vendee of the mortgagor. *Brooks* v. *Briggs,* 32 *Maine,* 447.

3. The recording of the mortgage is legally equivalent to an actual delivery. *Forbes* v. *Parker,* 16 *Pick.,* 466.

4. The assignee of a chattel mortgage becomes vested with the legal title, and may bring trover or trespass after condition broken, whether the assignment was made before or after forfeiture. The action must be in the assignee's name. *McKee* v. *Judd,* 2 *Kern,* 622 ; *Langdon* v. *Buel,* 9 *Wend.,* 80 ; *Montgomery* v. *Kerr,* 1 *Hill, S. C.,* 291 ; 2 *Hill, S. C.,* 587 ; 12 *Johns.,* 484.

5. In trover, the rule of damages is the value of the property converted, with interest from the time of conversion. *Clark* v. *Whitaker,* 19 *Conn.,* 319.

6. Transfer made in payment of a past debt, or for the purpose of securing a contemporaneous advance, is as much a sale for value as if the consideration were payable in cash. 2 *Am. Lead. Cases,* 216, fourth edition ; 1 *Smith's Lead. Cases,* part ii. 1080.

II. 1. If a party refuse to deliver goods to the owner, on the ground that they belong to himself or to a third person, such refusal amounts to a conversion. *Coffin* v. *Anderson,* 4 *Blackf.,* 406. To exercise dominion over personal property, in exclusion of the owner's right, is a conversion. *Reynolds* v. *Shuler,* 5 *Cow.,* 323. Possession of property, with a claim of title adverse to that of the owner, is evidence of conversion. *Maxwell*

PYLE v. WARREN.

v. *Harrison*, 8 *Geo.*, 61. Assuming to one's self the property, and the right to dispose of it, is a conversion. *Gillman* v. *Hill*, 36 *N. H.*, 311; *Bristol* v. *Burt*, 7 *John.*, 254. If an actual conversion is shown, demand need not be proved. *State* v. *Patten*, 49 *Maine*, 383; *Thompson* v. *Haile*, 3 *Wend.*, 406; *Wheeler* v. *Wheeler*, 33 *Maine*, 347; *Chamberlain* v. *Shaw*, 18 *Pick.*, 275.

2. Where two persons are in joint possession of personal property owned by a third, demand of one is sufficient to constitute the foundation for an action against both. *Ball* v. *Larkin*, 3 *E. D. Smith*, 555; and in *Loyd* v. *Bellis*, 37 *Eng. L. & E.*, 545; 18 *Pick.*, 287. *Held*, that a refusal by one partner is evidence of conversion by all the parties.

3. Demand made by an agent of the party interested is sufficient to support the action. *Harmon* v. *Barstow*, 23 *Mis.* (1 *Cush.*), 276.

III. "The judgment must be presumed to be right until shown to be wrong." The Court will not reverse because an instruction or charge may be erroneous, unless it be shown to have operated an actual or possible injury to the appellant; and this can only be done by showing on the facts as proven that he was entitled to a judgment in his favor: nor will the Court reverse for an erroneous instruction where the evidence plainly sustains the finding of the jury, nor where substantial justice has been done by the verdict, nor for errors in abstract propositions of law. *Armstrong* v. *Lipscomb*, 11 *Texas*, 654; *Lee* v. *Merrick*, 8 *Wis.*, 234; *White* v. *Jackson*, 15 *Ind.*, 156; *Lewis* v. *Bank Kent*, 12 *Ohio*, 151; *State* v. *Caster*, 10 *Iowa*, 456; *Clayton* v. *West*, 2 *Cal.*, 381; 15 *Ind.*, 190, 207, 325.

LAKE, J.

The errors assigned in the petition in this case may

all be included under two general heads : first, in excluding from the jury certain testimony ; and, secondly, in refusing to give to the jury several instructions as requested by the defendant. These alleged errors will be considered in the order of their assignment.

To maintain the issues on their part, the defendants called as a witness one John H. Croxton, who testified (the case being tried to a jury) that he was an attorney-at-law and a dealer in real estate ; that he kept in his office a set of abstracts of titles, and knew the value of such property. He was then asked this question : " Upon what do books of abstracts of titles depend for their value ? " An objection was interposed on behalf of the plaintiff, without, however, assigning any ground therefor. The Court sustained the objection, and excluded the proposed testimony ; to which the defendants duly excepted. It is not customary to consider an objection when no reason is given, unless the proposed testimony is entirely irrelevant or incompetent. Upon what gronnd this objection was sustained, we are at a loss to determine : indeed, the record discloses the fact that the defendant Warren had just before testified without objection upon the very subject of this inquiry, — " that the value of books of abstracts of titles depends upon and consists in their accuracy, and that incorrect books would be worthless." Testimony had also been given to the jury that these books were very inaccurate and unreliable.

It is but a reasonable inference from the import of this question, that the witness Croxton would have given a similar answer had he been permitted to testify. Had he done so, it would, perhaps, have had a tendency to give increased weight to the testimony of the defendant Warren, — " that the books were not worth a hundred dollars." The question was certainly perti-

nent; and we see no good reason sustaining the objection.

But, while the question was proper, the fact should not be overlooked, that, in addition to the testimony of Warren, we have that of Simeon H. Calhoun to the same effect. That the value of these books depends upon their accuracy was not disputed: there was no conflict in the testimony on this point. The fact having been sworn to by two credible witnesses, and being uncontroverted, I cannot see how a repetition of the testimony by Croxton could have produced any different result.

The interest of the plaintiff in the books was but little over two hundred dollars. This was certainly much less than their fair value. On the part of the defendants, Warren swears in one place that they were not worth a hundred dollars; at another, that they were worth about three hundred dollars, and that he would sell them for that. On behalf of the plaintiff, four or five witnesses (real-estate dealers) testify that they are worth from twelve hundred to fifteen hundred dollars: so that it would not have been possible for the jury to have valued the property at less than the interest of the plaintiff, even if Croxton had been permitted to answer the question put to him by the defendants.

The defendants requested the Court to give to the jury two instructions as to the legal presumptions arising from the retention of the mortgaged property by the mortgagor. Although differing slightly in form, they present substantially the same question for our consideration.

The request was as follows: " That, if the jury find from the evidence that the chattels mortgaged were left under the control and in the possession of the mort-

PYLE *v.* WARREN.

gagor, such mortgage was presumptively fraudulent and void; and that, in the absence of evidence on the part of the plaintiff showing the *bona fides* of such mortgage, such sale by mortgage was conclusively fraudulent and void, and that the plaintiff could not recover.

"That the retention of the mortgaged chattels by the mortgagor is *prima-facie* evidence of fraud; and that, in the absence of evidence showing the *bona fides* of the transaction, the sale was fraudulent and void, and that the plaintiff could not recover."

The Court refused to give the instructions, on the ground that they were inapplicable to the case; at the same time, admitting their correctness as abstract legal propositions.

The question presented for our determination calls for a construction of sect. 70, chap. xliii., of the *Revised Statutes*, which provides that "every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged, or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, *or subsequent purchasers in good faith*, and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the persons claiming under such sale or assignment that the same was made in good faith, and without any intent to defraud such creditors or purchasers."

In the case at bar, it is undoubtedly true that the property described in the mortgage, and which is the subject of the action, was left in the possession of

the mortgagor ; and that, under the section of the statute just quoted as to certain persons, the transaction would be declared fraudulent. But who is entitled to invoke the aid of this provision ? Not every person, most certainly. It is expressly limited by unequivocal language to creditors of the person making the sale or assignment, *and subsequent purchasers in good faith.* Before a *purchaser* can invoke the aid of this statute, he must establish his own *bona fides.* If, at the time of his purchase,. he knew of the existence of the mortgage, he will take the property charged with the just claims of the mortgagee, or in case of an assignment of the assignee of the mortgagee under the mortgage.

Looking to the record, we fail to discover any evidence of good faith on their part in making the purchase. They paid only about a hundred and fifty dollars for property, which, from a due consideration of all the testimony, could not have been worth less than eight hundred dollars at that time. This would seem to indicate that they must have known that the property was encumbered. It is true that both of the defendants swear that they had no personal knowledge of the mortgage at the time of making the purchase ; but the mortgage was duly recorded, which gave them at least constructive notice of its existence. Taking all the testimony together, — the fact that one of the defendants is an attorney, and the other a business-man dealing in real estate, both knowing the importance of referring to the records of the county in ascertaining the condition of the property they were about to purchase, — my mind cannot resist the conclusion that the existence of the mortgage was well known to them at the time of the purchase. Had testimony been offered to the jury tending to establish the good faith of the defendants, still I would hold the proposed instructions to be

erroneous. They, in effect, take from the jury one of the principal issues which they were sworn to try; viz., the want of notice on the part of the defendants. Unless this fact were first found in their favor by the jury, it was quite useless for them to inquire into the good faith of the mortgage sale. For these reasons, I am of the opinion that there was no error in refusing these two instructions.

The defendants further requested the Court to instruct the jury, " that the filing of the chattel mortgage in the office of the county clerk did not rebut the presumption of fraud arising from the continued possession of the mortgaged property by the mortgagor, and that such filing of the chattel mortgage is not a substitute for change of possession." This instruction is substantially correct: the failure to record the mortgage where there is no change of possession of the things mortgaged renders it " *absolutely void* " as to the creditors of the mortgagor and subsequent purchasers in good faith. In such case this legal presumption of fraud cannot be overcome by any amount of evidence of good faith in the execution of the mortgage: it is made by the statute an indisputable presumption. If, however, the mortgage be duly recorded, and the mortgagor retain possession of the property, the presumption of fraud is merely *prima facie*, and may be overcome by competent testimony; but, if no evidence of good faith be produced, this presumption becomes conclusive as to creditors and *bona-fide* purchasers.

But there was no error in the refusal to give this instruction, for the reason that the defendants were not in an attitude to defend it. It was not an admitted fact that they were purchasers in good faith, nor had they given testimony that such was the fact. Until they established their own good faith in making the pur-

PYLE *v.* WARREN.

chase, they were in no situation to complain either because of the property remaining with the mortgagor, or the failure to record the mortgage.

We discover no error in the refusal to give the remaining instructions as requested. The plaintiff was not claiming the property as an innocent purchaser : he was the assignee of the mortgagee, and took by the assignment whatever interest his brother, John W. Pyle, had in the property. It is quite immaterial what he paid for that interest, — whether much or little.

There can be no question raised as to the conversion under the pleadings. The defendants allege that they purchased the books from Wilson, the mortgagor, and that they have a good title as against the plaintiff. Possession of property, with a claim of title adverse to the owner, is evidence of a conversion. *Maxwell* v. *Harrison*, 8 *Geo.*, 61. In such case no demand need be shown.

After a very careful examination of the whole record, we fail to discover any error which calls for a reversal of the case. We believe that substantial justice has been done, and that no different result could possibly be attained by awarding a new trial.

The judgment of the District Court is affirmed with costs.

Judgment affirmed.